Tonia Ouellette Klausner
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: 212-497-7706
Facsimile: 866-974-7329
Email: tklausner@wsgr.com

Jessica Kitson
VOLUNTEER LAWYERS FOR JUSTICE
24 Commerce Street, Suite 610
Newark, New Jersey 07102
Telephone: 973-645-1951
Facsimile: 973-645-7954
Email: jkitson@wljnj.org

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| YUDELKY DIAZ REYES, | ) | Civil Action No.: 24-cv-10819 |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) |  |
|  | ) |  |
| HANY YOUHANA and ALEXANDRA ARIAS | ) |  |
| ORLOWSKA, | ) |  |
|  | ) |  |
| Defendants. | ) |  |
|  | ) |  |

## PLAINTIFF'S MEMORANDUM OF LAW
## <u>IN OPPOSITION TO MOTION TO DISMISS</u>

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ......................................................................................................... 1

FACTS ......................................................................................................................... 1

ARGUMENT ............................................................................................................... 4

I.  DEFENDANT ARIAS ORLOWSKA IS NOT IMMUNE FROM SUIT ......................... 4

  A.  Legal Standard ........................................................................... 4

  B.  Diplomatic Immunity ................................................................. 4

  C.  Consular Immunity ..................................................................... 5

  D.  Defendant Arias Orlowska Has Presented Insufficient Evidence that She
      Cannot be Held Accountable Because of Diplomatic Immunity ........................... 6

  E.  Defendant Arias Orlowska's Conduct Does Not Qualify for Consular
      Immunity ................................................................................. 8

  F.  Defendant Arias Orlowska's Conduct Does Not Qualify for Diplomatic
      Immunity ................................................................................. 9

II.  PLAINTIFF'S WAGE CLAIMS ARE NOT BARRED ................................................. 12

  A.  Legal Standard ......................................................................... 12

  B.  Plaintiff's FLSA and NJSA Claims Are Not Barred by the Statute of
      Limitations Because of Equitable Tolling ............................................. 12

    1.  Plaintiff's Claims Should be Tolled Because Defendants Actively
        Misled Her ........................................................................ 13

    2.  Plaintiff's Claims Should be Tolled Because Plaintiff Was
        Prevented from Asserting Her Rights in an Extraordinary Way ............. 14

    3.  Plaintiff's Claim Under the N.J.S.A. Is Not Time Barred for an
        Additional Reason ................................................................. 14

III.  PLAINTIFF'S FAILURE TO PROVIDE NOTICE BEFORE TERMINATING
     THE CONTRACTS DOES NOT BAR HER FROM RECOVERY ............................... 15

  A.  Defendant Arias Orlowska Was the First to Fail to Perform Under the
      Contracts ............................................................................. 15

B.    Plaintiff's Failure to Provide Notice of Termination Did Not Breach Any Contractual Obligation ........................................................................................ 18

C.    Plaintiff's Failure to Provide Notice of Termination Was Legally Excused ........ 19

D.    Even if Plaintiff Breached the Contracts, Plaintiff May Still Recover Due to Her Substantial Performance ........................................................................ 20

IV.    PLAINTIFF IS ENTITLED TO PLEAD UNJUST ENRICHMENT. ........................... 23

A.    Plaintiff May Bind Defendant Youhana to the Contracts Under Unjust Enrichment. ........................................................................................................ 23

B.    Plaintiff May Plead Unjust Enrichment in the Alternative ................................... 24

CONCLUSION .................................................................................................................. 25

## **<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

### CASES

*Argueta v. U.S. Immigration and Customs Enf't*,
    643 F.3d 60 (3d Cir. 2011)................................................................12

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................................12

*Belzberg v. Verus Invs. Holdings Inc.*,
    21 N.Y.3d 626 (2013) ...................................................................23

*Broidy Cap. Mgmt. LLC v. Benomar*,
    944 F.3d 436 (2d Cir. 2019)..............................................................4

*Caduceus, Inc. v. Univ. Physician Grp.*,
    713 F. Supp. 3d 30 (D.N.J. 2024) ........................................................9

*Carlson v. Arnot-Ogden Mem'l Hosp.*,
    918 F.2d 411 (3d Cir. 1990)..............................................................18

*Chen v. Century Buffet & Rest.*,
    2012 U.S. Dist. LEXIS 4214 (D.N.J. Jan. 12, 2012) ...........................12, 13

*City of Trenton v. Cannon Cochran Mgmt. Servs. Inc.*,
    2011 N.J. Super. Unpub. LEXIS 2076, 2011 WL 3241579
    (N.J. Super. Ct. App. Div. Aug. 1, 2011) ...............................................15

*Conyers v. Rossides*,
    558 F.3d 137 (2d Cir. 2009)..............................................................4

*Cruz v. Maypa*,
    773 F.3d 138 (4th Cir. 2014) .........................................................13, 14

*Dautrich v. Nationstar Mortg., LLC*,
    2018 U.S. Dist. LEXIS 109039 (D.N.J. June 29, 2018) ..............................16

*Dougherty v. Drew Univ.*,
    534 F. Supp. 3d 363 (D.N.J. 2021) .......................................................24

*Fed. Ins. Co. v. Richard I. Rubin & Co.*,
    12 F.3d 1270 (3d Cir. 1993).............................................................9

*Federman v. Bank of Am., N.A.*,
    2016 U.S. Dist. LEXIS 70787 (D.N.J. May 31, 2016) ................................23

*Ford v. Clement*,
    834 F. Supp. 72 (S.D.N.Y. 1993) ........................................................6

*Frederico v. Home Depot*,
    507 F.3d 188 (3d Cir. 2007) ...................................................................................15

*Fun v. Pulgar*,
    993 F. Supp. 2d 470 (D.N.J. 2014) .........................................................................7

*Gerritsen v. Consulado General de Mexico*,
    989 F.2d 340 (9th Cir. 1993) ...................................................................................6

*Gonzalez Paredes v. Vila*,
    479 F. Supp. 2d 187 (D.D.C. 2007) .......................................................................10

*Heights, L.L.C. v. Qdoba Rest. Corp.*,
    2020 U.S. Dist. LEXIS 271207 (D.N.J. Sept. 3, 2020) .........................................16

*In re Alleged Failure of Altice USA, Inc.*,
    253 N.J. 406 (2023) ...............................................................................................20

*In re Exide Techs.*,
    607 F.3d 957 (3d Cir. 2010) ...................................................................................21

*Jenkins v. BAC Home Loan Servicing, LP*,
    822 F. Supp. 2d 1369 (M.D. Ga. 2011) .................................................................23

*Jones v. Silver Care Operations LLC*,
    2017 U.S. Dist. LEXIS 236613 (D.N.J. Nov. 14, 2017) .......................................12

*Kelly v. Borough of Union Beach*,
    2011 U.S. Dist. LEXIS 12839 (D.N.J. Feb. 8, 2011) ............................................12

*Lafelice v. Stanley Kim*,
    2022 N.J. Super. Unpub. LEXIS 3276
    (N.J. Super. Ct., Bergen Cnty. April 14, 2022) ......................................................7

*Las Vegas Sands Corp. v. ACE Gaming, LLC*,
    713 F. Supp. 2d 427 (D.N.J. 2010) .......................................................................19

*Lawmen Supply Co. of N.J. v. Glock, Inc.*,
    330 F. Supp. 3d 1020 (D.N.J. 2018) ......................................................................23

*Maddy v. GE*,
    80 F. Supp. 3d 544 (D.N.J. 2015) ..........................................................................19

*Marino v. Brighton Gardens of Mountainside*,
    697 F. Supp. 3d 224 (D.N.J. 2023) ..................................................................15, 16

*Messenger v. Cabot Oil & Gas Corp.*,
    2021 U.S. Dist. LEXIS 114753 (M.D. Pa., June 21, 2021) ...................................13

*Miller v. Beneficial Mgmt. Corp.*,
    977 F.2d 834 (3d Cir. 1992) ...................................................................................13

*Montuya v. Chedid*,
    779 F. Supp. 2d 60 (D.D.C. 2011) ...........................................................................7

*Newark Cab Ass'n v. City of Newark*,
    901 F.3d 146 (3d Cir. 2018)............................................................................15

*Park v. Shin*,
    313 F.3d 1138 (9th Cir. 2002) .........................................................................8

*Pharm. Sales Consulting Corp. v. Accucorp Packaging, Inc.*,
    231 F. App'x 110 (3d Cir. 2007) ....................................................................20

*Rose v. Ferrari N. Am., Inc.*,
    2023 U.S. Dist. LEXIS 23048 (D.N.J. Dec. 14, 2023) ....................................9

*Ross v. Varano*,
    712 F.3d 784 (3d Cir. 2013).............................................................................14

*Sabbithi v. Al Saleh*,
    605 F. Supp. 2d 122 (D.D.C. 2009) .................................................................7

*Schuran, Inc. v. Walnut Hill Assocs.*,
    256 N.J. 228 (1991) ........................................................................................20

*Screen Actors Guild v. A. Shane Co.*,
    225 Cal. App. 3d 260 (1990) ..........................................................................18

*Seitzinger v. Reading Hosp. & Med. Ctr.*,
    165 F.3d 236 (3d Cir. 1999) ............................................................................12

*Swarna v. Al-Awadi*,
    622 F.3d 123 (2d Cir. 2010)...............................................................5, 8, 11

*Tabion v. Mufti*,
    877 F. Supp. 285 (E.D. Va. 1995),
    *aff'd*, 73 F.3d 535 (4th Cir. 1996)............................................................8, 9, 10

*United States ex rel. Mistick PBT v. Hous. Auth.*,
    186 F.3d 376 (3d Cir. 1999).............................................................................11

*United States v. Khobragade*,
    15 F. Supp. 3d 383 (S.D.N.Y. 2014) ................................................................5

*United States v. Kostadinov*,
    734 F.2d 905 (2d Cir. 1984)..............................................................................5

*United States v. Kuznetsov*,
    442 F. Supp. 2d 102 (S.D.N.Y. 2006) ..............................................................6

*United States v. Midgley*,
    142 F.3d 174 (3d Cir. 1998).......................................................................12, 13

*Universal Computs. (Sys.), Ltd. v. Datamedia Corp.*,
    653 F. Supp. 518 (D.N.J. 1987) ......................................................................20

*Wisconsin Central Ltd. v. United States*,
    138 S. Ct. 2067 (2018)....................................................................................10

*Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*,
    215 F.3d 247 (2d Cir. 2000)..........................................................................................4

## STATUTES

Fair Labor Standards Act ("FLSA") ...........................................................................12, 13

New Jersey's Wage Act ("NJSA") ......................................................................12, 14, 15

New Jersey Wage Collection Law ("NJWCL") .................................................................13

Trafficking Victims Protection Act ("TVPA")..................................................................13

Vienna Convention on Diplomatic Relations ("VCDR").................................................4, 5

Vienna Convention on Consular Relations ("VCCR")........................................................5

## RULES

Fed. R. Civ. P. 8(a)(3)......................................................................................................23

Fed. R. Civ. P. 12(b)(1)......................................................................................................4

Fed. R. Civ. P. 12(b)(6)....................................................................................................11

## OTHER AUTHORITIES

*Commercial*, Black's Law Dictionary (12th ed. 2024) ...............................................10, 11

Preface to the State Department's Diplomatic List, https://2017-
    2021.state.gov/wp-content/uploads/2020/10/Fall-2020-Diplomatic-
    List1.pdf. ..........................................................................................................................7

State of New Jersey, Department of Labor and Workforce Development, Wage &
    Hour and Compliance FAQs (for Employers),
    https://www.nj.gov/labor/wageandhour/support/faqs/wageandhouremploy
    erfaqs.shtml#:~:text=Notice%20is%20not%20required%20by,without%20
    a%20reason%2C%20without%20cause (last visited March 7, 2025)..............................18

*Trade*, Black's Law Dictionary (12th ed. 2024)...............................................................11

U.S. Dep't of State, Office of Foreign Missions, Diplomatic and Consular
    Immunity: Guidance for Law Enforcement and Judicial Authorities, at 7
    (2018)............................................................................................................................5, 9

## INTRODUCTION

Defendants Alexandra Arias Orlowska ("Defendant Arias Orlowska") and her husband Hany Youhana ("Defendant Youhana") accepted the benefits of a contract with Plaintiff Yudelky Diaz Reyes ("Plaintiff") for domestic help, but neither Defendant Arias Orlowska nor Defendant Youhana paid the agreed upon, and legally required, wages. This fact is not in dispute. Plaintiff seeks to recover the amounts owed to her under applicable labor laws. Defendant Arias Orlowska asks the Court to dismiss all claims against her based on diplomatic immunity, to which she is not entitled to. Defendant Youhana asks the court to dismiss the *quasi* contract claim against him because there is an express contract between Plaintiff and his wife governing the same services *even though Defendants claim she is immune from liability*. In short, Defendants ask this Court to let them off the hook entirely for failing to comply with the contract and New Jersey and federal law. None of Defendants' arguments hold water. As explained below, Plaintiff has more than plausibly alleged Defendant Arias Orlowska breached the contract and Defendant Youhana benefitted from the contract, and as such, Defendants violated federal and state labor laws. Thus, Defendants' Motion to Dismiss ("Motion" or "Mot.") should be denied in its entirety and Plaintiff permitted to pursue her claims.

## FACTS

Plaintiff Yudelky Diaz Reyes left her life in the Dominican Republic ("D.R.") to work for and live with Defendants Arias Orlowska and Youhana. Compl. ¶¶ 2, 5, 30. Defendant Arias Orlowska is a citizen of the D.R. and a Minister Counselor with the Permanent Mission of the D.R. to the United Nations. *Id.* ¶ 23; Mot., Ex. B. Defendant Youhana is a U.S. Citizen. Compl. ¶ 23.

In 2016, Plaintiff and Defendant Arias Orlowska entered into the employment contract required by the U.S. State Department to bring a citizen of another country into the U.S. for the

purpose of provide domestic labor services—the U.S. State Department's Model Contract for Workers with an A-3 or G-5 Visa ("Initial Contract").[1] The Initial Contract required that: (a) Plaintiff work five days a week for a total of approximately forty hours per week; (b) Defendant Arias Orlowska pay Plaintiff at least $840.00 every two weeks; (c) Plaintiff receive paid time off, including twenty days of paid vacation per calendar year; (d) Plaintiff be given overtime pay for any hours worked over the contractually obligated forty hours per week; and (e) Plaintiff be given private sleeping quarters. *Id.* ¶¶ 3, 26-27. Defendant Arias Orlowska reinforced these contractual obligations to Plaintiff via oral promises. *Id.* ¶ 4.

When Plaintiff moved to New Jersey to work for Defendants she was blindsided. She found out that Defendant Arias Orlowska had no intention of honoring her obligations under the Initial Contract. *Id.* ¶ 7. Defendants made Plaintiff sleep on a fold-out couch in the family's living room with nowhere to store her belongings. *Id.* Plaintiff provided the services required by the Initial Contract to both Defendants – cooking meals, washing, drying, and folding laundry, ironing, cleaning, caring for the children, and more. *Id.* ¶ 8. But Defendant Arias Orlowska failed to uphold her end of the deal. *Id.* ¶ 35-36. Defendant Arias Orlowska did not pay Plaintiff the agreed upon wage, nor overtime earned. *Id.* ¶ 35. Indeed, Plaintiff worked long hours seven days a week and was barely paid anything at all. *Id.* ¶¶ 8, 31-38.

In 2019, Defendant Arias Orlawska and Plaintiff entered an amendment to the Initial Contract[2] (the "Amendment," and collectively with the Initial Contract the "Contracts"). Plaintiff agreed to provide the same services to Defendants' family, in exchange for, among other things, a

---

[1] Defendant Youhana was not a signatory to the Initial Contract.
[2] Defendant Youhana was not a signatory to the Amendment to the Initial Contract.

higher hourly rate. *Id.* ¶¶ 44-45.[3] Once again Plaintiff complied with her contractual obligations and Defendant Arias Orlowska did not. *Id.* ¶ 47. Among other things, Defendants paid Plaintiff neither the agreed upon increased wage nor the required overtime. *Id.* ¶ 35. Defendant Arias Orlowska still failed to give Plaintiff a private bedroom forcing her to continue sleeping in the family's shared living room on a fold-out sofa bed. *Id.* ¶ 47. In short, Defendant Arias Orlowska breached the Contracts, and both Defendants violated applicable labor laws. *Id.* ¶¶ 57-92.

Early on during her employment, Plaintiff complained to Defendant Arias Orlowska that she was not honoring the terms of the Initial Contract. *Id.* ¶ 40. In response, Defendant Arias Orlowska alternated between telling Plaintiff she should be grateful for the work, and threatening Plaintiff with retaliation if she left. *Id.* ¶¶ 9, 11. Specifically, Defendant Arias Orlowska told Plaintiff that there was a prior domestic worker who left before the end of her contractual term was up, and because she did not work for the full contractual term this worker could no longer return to or work in the United States. *Id.* ¶ 40. Plaintiff understood this to mean that Defendant Arias Orlowska would use her power and influence as a Minister Counselor from a powerful family to prevent Plaintiff from working or returning to the United States if she also left before completing the contractual term. *Id.* ¶¶ 11, 40. Terrified, ineligible to work lawfully anywhere else in the United States, and dependent upon her paltry income to provide for her minor son back in the D.R., Plaintiff continued to comply with her obligations under the Contracts. *Id.* ¶¶ 10, 12, 39, 43. Defendants do not dispute these allegations in their Motion.

Ultimately, Plaintiff did leave Defendants' employment. *Id.* ¶ 53. A U.S. State Department official contacted Plaintiff and scheduled an interview to discuss her working conditions. *Id.* ¶ 48.

---

[3] Defendants attached both the Contract and Amendment as Exhibits B and C, respectively, to their Motion, acknowledging the terms and conditions of each employment contract. *See generally,* MTD, Exhibit B-C.

Defendant Arias Orlowska lied to Plaintiff and said that if Plaintiff told the truth about her working conditions to the official, Defendant Arias Orlowska's children would be taken away from her. *Id*. ¶¶ 13-14, 49. Afraid, Plaintiff postponed the interview and continued working for Defendants. *Id*. ¶¶ 14, 51. But Plaintiff was unable to put off the interview forever. *Id*. ¶¶ 15, 52. When the time finally came, Plaintiff courageously refused to lie. *Id*. Instead, Plaintiff told the official the truth. *Id*. Having refused to lie to the U.S. government as requested, Plaintiff feared retribution and did not return to Defendants' home. *Id*. ¶¶ 15, 53.

## ARGUMENT

### I.    DEFENDANT ARIAS ORLOWSKA IS NOT IMMUNE FROM SUIT

#### A.    Legal Standard

When reviewing a party's motion to dismiss under Fed. R. Civ. P. 12(b)(1), the court generally must "accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009) (citations omitted). Where the defendant has come forward with evidence in support of their immunity claim, the plaintiff then must prove by a preponderance of the evidence that an exception to diplomatic immunity applies. *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 443 (2d Cir. 2019). When a factual challenge to the court's jurisdiction has been raised, "the court may resolve [any] disputed jurisdictional fact issues by referring to evidence outside of the pleadings." *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000).

#### B.    Diplomatic Immunity

Defendants argue that Defendant Arias Orlowska is entitled to diplomatic immunity pursuant to the Vienna Convention on Diplomatic Relations, Apr. 18, 1961, *entered into force with respect to the United States Dec. 13, 1972*, 23 U.S.T. 3227 ("VCDR"). The VCDR sets forth, *inter alia*, the privileges and immunities to be accorded to diplomatic agents. A "diplomatic agent" is

the term for ambassadors and the other high level diplomatic officers who generally have the function of dealing directly with host country officials. *See* U.S. Dep't of State, Office of Foreign Missions, Diplomatic and Consular Immunity: Guidance for Law Enforcement and Judicial Authorities, at 7 (2018). Under the VCDR, current diplomatic agents[4] have near-absolute immunity from civil liability in the Receiving State (i.e., the country in which the diplomat is stationed). Pursuant to Art. 31:

> A diplomatic agent shall enjoy immunity from the criminal jurisdiction of the receiving State. He shall also enjoy immunity from its civil and administrative jurisdiction, except in the case of:
> (a) a real action relating to private immovable property...;
> (b) an action relating to succession...;
> (c) an action relating to any professional or commercial activity exercised by the diplomatic agent in the receiving State outside his official functions.

VCDR Art. 31.

### C.    Consular Immunity

The Vienna Convention on Consular Relations ("VCCR") governs consular immunity. *United States v. Kostadinov*, 734 F.2d 905, 910 (2d Cir. 1984). The degree of immunity that consular officers receive is more restricted than that enjoyed by diplomats. *See Khobragade*, 15 F. Supp. 3d at 385. Specifically, whereas diplomatic officers have almost complete immunity from a receiving state's civil and criminal jurisdiction, consular officers and employees are only entitled to immunity "in respect of acts performed in the exercise of consular functions." *Compare* VCDR Art. 31 23 U.S.T. 3227 *with* VCCR Art. 43(1) 21 U.S.T. 77.

---

[4] Both consular and diplomatic immunity expire after the officer's appointment has been terminated. Consular officers and diplomatic officers enjoy *residual immunity* after the term of appointment only for acts performed in the exercise of official functions. For all other acts, including those that took place during a period of full immunity, former diplomats are not immune. *See* VCDR Art. 39(2); *United States v. Khobragade*, 15 F. Supp. 3d 383, 386 (S.D.N.Y. 2014); *Swarna v. Al-Awadi*, 622 F.3d 123, 134 (2d Cir. 2010).

Determining whether consular immunity applies "involves a two-part inquiry." *Ford v. Clement*, 834 F. Supp. 72, 75 (S.D.N.Y. 1993) (citing *Gerritsen v. Consulado General de Mexico*, 989 F.2d 340, 346 (9th Cir. 1993)). First, the court must determine whether the official's actions "implicated some consular function." *Id*. Second, the "acts for which the consular officials seek immunity must be 'performed in the exercise of the consular functions' in question." *Id*.

The VCCR sets forth twelve specific consular functions, including protecting "the interests of the sending State and … its nationals" and "issuing passports and travel documents to nationals of the sending State." VCCR Art. 5. In addition, the VCCR contains a catchall provision defining consular functions as "any other functions entrusted to a consular post by the sending State which are not prohibited by the laws and regulations of the receiving State or . . . which are referred to in the international agreements in force between the sending State and the receiving State." VCCR Art. 5(m).

### D. Defendant Arias Orlowska Has Presented Insufficient Evidence that She Cannot be Held Accountable Because of Diplomatic Immunity

Defendant Arias Orlowska claims she is a diplomatic agent based solely upon two documents stating that she is a diplomat with the Permanent Mission of the Dominican Republic to the United Nations (the "Mission"): (1) Defendant Arias Orlowska's own declaration stating that she holds that title; and (2) a letter from Jose A. Blanco, the Dominican Republic's Ambassador to the United Nations, attesting to Defendant Arias Orlowska's title of Minister Counsellor. *See* Mot., Ex. A, Orlowska Decl. ¶¶ 3-4. However, it is self-evident that even if Defendant Arias Orlowska has the title of Minister Counsellor, that does not necessarily mean that she is entitled to diplomatic immunity—immunity is based on function and not title alone. Moreover, diplomatic immunity is premised upon "recognition and certification by the State Department." *United States v. Kuznetsov*, 442 F. Supp. 2d 102, 107 (S.D.N.Y. 2006). The State

Department maintains a list containing the names of diplomatic staff entitled to such immunity, and Defendant Arias Orlowska's name does not appear.[5] The lack of such recognition by the State Department, here, combined with the facts alleged in the Complaint, are sufficient to show by a preponderance of the evidence that Defendant Arias Orlowska is not entitled to immunity.

Notably, in four out of the five cases Defendants cite for their argument that Defendant Arias Orlowska is entitled to diplomatic immunity the defendants proffered documentation from the State Department confirming their status as diplomatic agents. In *Fun v. Pulgar*, the court received a letter from the United States Mission to the United Nations that certified the status of both defendants as entitled to immunity. 993 F. Supp. 2d 470, 472 (D.N.J. 2014). In *Montuya v. Chedid*, the defendants submitted a letter from the State Department that confirmed one of the defendants had diplomatic status and the other formed part of the former's household. 779 F. Supp. 2d 60, 62 (D.D.C. 2011). In *Sabbithi v. Al Saleh*, defendants filed a letter from the State Department which confirmed that one of the defendants was a diplomatic agent and that the other was his spouse and a national of Kuwait residing in his household. 605 F. Supp. 2d 122, 126 (D.D.C. 2009). In *Sabbithi*, the defendants also filed the State Department's Diplomatic List showing both of their names as diplomats of Kuwait. *Id*. In *Lafelice v. Stanley Kim*, both defendants had

---

[5] The Preface to the State Department's Diplomatic List states that it "contains the names of members of the diplomatic staff of all missions and their spouses. Members of the diplomatic staff are those mission members having diplomatic rank. These persons, with the exception of those identified by asterisks, *enjoy full immunity* under provisions of the Vienna Convention on Diplomatic Relations." https://2017-2021.state.gov/wp-content/uploads/2020/10/Fall-2020-Diplomatic-List1.pdf. (emphasis added). The list was last published in 2020, during which time Defendants allege that Defendant Arias Orlowska was a diplomat with the Mission and entitled to immunity. *See* Mot., Ex. A., Orlowska Decl. ¶ 4.

diplomatic identification cards issued by the State Department. 2022 N.J. Super. Unpub. LEXIS 3276, at *2 (N.J. Super. Ct., Bergen Cnty. April 14, 2022).[6]

Defendant Arias Orlowska, on the other hand, merely proffers a self-serving declaration and an unsworn letter from the Ambassador of the Dominican Republic to the United Nations.[7] Defendants present no evidence from the State Department recognizing Defendant Arias Orlowska's status as a diplomat nor her entitlement to immunity. Indeed, the State Department *omitted* Defendant Arias Orlowska from its list of diplomats entitled to immunity. Under these circumstances, Defendants' submissions are insufficient to establish diplomatic immunity.

### E.    Defendant Arias Orlowska's Conduct Does Not Qualify for Consular Immunity

Defendant Arias Orlowska's employment of Plaintiff was not a consular function within the meaning of the VCCR. Hiring a domestic worker to cook, clean, and provide childcare in a consular official's household falls neither within any of the specific functions set forth in the VCCR, nor within the scope of Article 5(m)'s catch-all provision. *See, e.g., Park v. Shin*, 313 F.3d 1138, 1142 (9th Cir. 2002) (holding that a consular official's employment of a "personal domestic servant" is not a consular function) (emphasis in original); *Swarna*, 622 F.3d at 137-40 (rejecting the argument that residual diplomatic immunity shields a diplomat from causes of action arising out of the employment of a domestic worker).[8]

---

[6] In *Tabion v. Mufti*, the decisions of the trial court and appellate court are silent regarding the evidence defendants presented verifying their status as diplomats and entitlement to immunity. 877 F. Supp. 285 (E.D. Va. 1995), *aff'd*, 73 F.3d 535 (4th Cir. 1996).

[7] The Ambassador's letter is not notarized, but even if it was, the Ambassador would be absolutely immune from prosecution for perjury, so the letter should be given no weight.

[8] The standard for residual diplomatic immunity is virtually identical to that for consular immunity. Specifically, Article 39(2) of the VCDR provides that former diplomats are entitled to immunity for "acts performed by such a person in the exercise of his functions as a member of the mission," while Article 43(1) of the VCCR Art. 43(1) grants immunity to consular officers "in respect of acts performed in the exercise of consular functions."

Even if Article 43(1) of the VCCR provided a basis for consular immunity, here, the Court should still find subject matter jurisdiction exists because the alleged circumstances of Plaintiff's employment would trigger an exception to the immunity provision of the VCCR. Specifically, the VCCR provides that immunity from jurisdiction in a civil action does not apply when the action "aris[es] out of a contract concluded by a consular officer or a consular employee in which he did not contract expressly or impliedly as an agent of the sending State." Art. 43(2)(b).

Finally, should the Court find that Defendants have presented sufficient proof to shift the burden to Plaintiff and that Plaintiff has not met that burden, Plaintiff respectfully requests an opportunity to engage in jurisdictional discovery so that she can respond more fulsomely to Defendants' submissions.[9] *See Fed. Ins. Co. v. Richard I. Rubin & Co.*, 12 F.3d 1270, 1284 n.11 (3d Cir. 1993). Plaintiff's bar for getting such discovery is low and should be allowed unless the jurisdictional claim is clearly frivolous—which here it clearly is not. *See Rose v. Ferrari N. Am., Inc.*, 2023 U.S. Dist. LEXIS 23048, at *2-3 (D.N.J. Dec. 14, 2023); *Caduceus, Inc. v. Univ. Physician Grp.*, 713 F. Supp. 3d 30, 39 n.13 (D.N.J. 2024).

### F.    Defendant Arias Orlowska's Conduct Does Not Qualify for Diplomatic Immunity

Defendants' reliance on their cited cases for the proposition that diplomatic immunity covers all civil suits brought by domestic workers is misplaced. *See* Mot. at 4-5. For example, in *Tabion*, 73 F.3d at 538-39, the Fourth Circuit stated that "[d]ay-to-day living services such as dry cleaning or domestic help were not meant to be treated as outside a diplomat's official functions ... [b]ecause these services are incidental to daily life." But that statement was made in the context

---

[9] For example, on information and belief, Defendant Arias Orlowska is a green card holder and permanent resident of the United States, which, if true, would be fatal to her diplomatic immunity arguments. *See* U.S. Dep't of State, Office of Foreign Missions, Diplomatic and Consular Immunity: Guidance for Law Enforcement and Judicial Authorities, at 9 (2018).

of considering whether a diplomat's hiring of a domestic servant fell within the "commercial activity" exception to diplomatic immunity under Article 31(1)(c). Thus, *Tabion* articulates the scope of acts as they relate to the term "commercial activity," it does not define in the context of Article 31(1), nor address whether the conduct alleged here falls into that category.[10]

Defendants rely heavily on *Tabion*. But that case is from the Fourth Circuit, so it is not binding on this Court. Plaintiff respectfully submits that *Tabion's* conclusion that a contract for domestic services does not fall within the "commercial activity" exception to diplomatic immunity is wrong for multiple reasons.

First, hiring domestic help pursuant to a formal contract is "commercial activity." Courts construe statutes by giving each word its plain meaning. *See Wisconsin Central Ltd. v. United States*, 138 S. Ct. 2067, 2074 (2018) ("[I]t's a fundamental canon of statutory construction that words generally should be interpreted as taking their ordinary . . . meaning . . . at the time Congress enacted the statute.") (citation omitted). The word "commercial" means, [o]f, relating to, or involving the selling of goods or services for profit." *Commercial*, Black's Law Dictionary (12th

---

[10] Even assuming Defendant Arias Orlowska was entitled to immunity, which Plaintiff vehemently disputes, Defendants' Motion to dismiss based on diplomatic immunity should be denied because the Court has subject matter jurisdiction to hear Plaintiff's claims against Defendant Youhana. Defendant Youhana is not a diplomat—neither the declaration annexed to the Motion nor the letter from José Blanco purport that he is a diplomat. *See* Orlowska Decl., Ex. A. Indeed, Defendants' Motion does not assert that Defendant Youhana is entitled to immunity in any form. Even if Defendant Arias Orlowska has immunity, that immunity would not extend to Defendant Youhana because he is an American national. It is well-settled that the Vienna Convention excludes immunity for U.S. citizen family members. In particular, the Convention "provides that the members of the family of a diplomatic agent forming part of his household shall, *if they are not nationals of the receiving State*, enjoy the privileges and immunities specified in Articles 29 to 36." *Gonzalez Paredes v. Vila*, 479 F. Supp. 2d 187, 191 (D.D.C. 2007) (citing VCDR, Art. 37) (emphasis added).

ed. 2024).[11] Additionally, the word "trade" means "[t]he business of buying and selling or bartering goods or services." *Trade*, Black's Law Dictionary (12th ed. 2024). Entering a formal contract for the provision of services from Plaintiff to Defendant Arias Orlowska clearly fits within the plain meaning of "commercial activity." Had Defendant Arias Orlowska entered a contract with a placement service company for Plaintiff to come work for her, there would be no dispute that Defendant Arias Orlowska was engaging in a commercial activity. There is no basis to reach a different result just because Defendant Arias Orlowska entered the services contract directly with Plaintiff.

Second, the Fourth Circuit's approach when applied to these specific circumstances would lead to the absurd result that diplomats can hire domestic help pursuant to a State Department mandated contract and then blatantly breach that contract and escape all civil liability. The purpose of diplomatic immunity is to facilitate diplomatic functions—not to shield individuals from accountability. *See Swarna*, 622 F.3d at 134 (citing *Vienna Convention* pmbl. cl. 4). Defendant Arias Orlowska should not be permitted to shield herself from accountability.

For these reasons Plaintiff respectfully submits that this Court should reject the Fourth Circuit's holding and find that Defendant Arias Orlowska's conduct falls within the "commercial activity" exception to diplomatic immunity. Thus, this Court has jurisdiction over the claims against Defendant Arias Orlowska.

---

[11] *See also United States ex rel. Mistick PBT v. Hous. Auth.*, 186 F.3d 376, 396 (3d Cir. 1999) (noting that recruiting, signing an employment contract, and working were "admittedly commercial in character.")

## II.    PLAINTIFF'S WAGE CLAIMS ARE NOT BARRED

### A.    Legal Standard

Under Rule 12(b)(6), a court may dismiss an action for failure to state a claim upon which relief can be granted. To survive a motion to dismiss for failure to state a claim the facts set forth in the complaint must be sufficient that, if accepted as true "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). All factual allegations from the Complaint must be interpreted in the light most favorable to the plaintiff. *Argueta v. U.S. Immigration and Customs Enf't*, 643 F.3d 60, 74 (3d Cir. 2011). Here, Plaintiff has plausibly alleged countless facts in the Complaint sufficient to establish that the limitations on Plaintiff's Fair Labor Standards Act ("FLSA") and New Jersey's Wage Act ("NJSA") claims should be tolled and should survive Defendants' Motion.

### B.    Plaintiff's FLSA and NJSA Claims Are Not Barred by the Statute of Limitations Because of Equitable Tolling

Equitable tolling applies when a plaintiff "ha[s] been prevented from filing in a timely manner due to sufficiently inequitable circumstances." *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 240 (3d Cir. 1999). The Third Circuit has identified three non-exclusive instances where equitable tolling may be appropriate: "(1) [if] the defendant has actively misled the plaintiff, (2) if the plaintiff has in some extraordinary way been prevented from asserting his rights, or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum." *Kelly v. Borough of Union Beach*, 2011 U.S. Dist. LEXIS 12839, at *18-19 (D.N.J. Feb. 8, 2011) (quoting *United States v. Midgley*, 142 F.3d 174, 179 (3d Cir. 1998)). Equitable tolling can toll FLSA claims, in addition to claims under the N.J.S.A. *See Jones v. Silver Care Operations LLC*, 2017 U.S. Dist. LEXIS 236613, at *2 (D.N.J. Nov. 14, 2017); *Chen v. Century Buffet & Rest.*, 2012 U.S. Dist. LEXIS 4214, at *11-12 (D.N.J. Jan. 12, 2012). Determining whether equitable tolling is warranted

is a fact-specific inquiry, and here, the facts support equitable tolling. Further, in this instance, a grant of equitable tolling would be "in the interest[] of justice." *See Messenger v. Cabot Oil & Gas Corp.*, 2021 U.S. Dist. LEXIS 114753, at *19 (M.D. Pa., June 21, 2021).

### 1.    Plaintiff's Claims Should be Tolled Because Defendants Actively Misled Her

Equitable tolling applies if the "defendant has actively misled the plaintiff." *Chen*, 2012 U.S. Dist. LEXIS 4214, at *11-12 (citing *Miller v. Beneficial Mgmt. Corp.*, 977 F.2d 834, 845 (3d Cir. 1992); *Midgley*, 142 F.3d at 179. Here, Defendant Arias Orlowska actively misled and coerced Plaintiff to work more hours than she was contractually obligated for less pay, and even threatened Plaintiff to lie to the State Department about her working conditions. Compl. ¶¶ 35, 47, 50. All in all, Defendant Arias Orlowska intimidated Plaintiff not to assert her rights. *Id*. ¶¶ 10-14. Not only did Defendant Arias Orlowska renege on her legal obligations and other promises, but Defendant Arias Orlowska also threatened, intimidated, and misinformed Plaintiff to prevent her from discovering or acting upon her rights. *Id*. ¶¶ 40-47. Finally, there was no notice posted to Plaintiff's job site informing her of her rights under applicable labor laws.

In  *Cruz v. Maypa*, 773 F.3d 138, 147 (4th Cir. 2014), the Fourth Circuit tolled the plaintiff's Trafficking Victims Protection Act ("TVPA") and FLSA claims because the plaintiff worked for less than minimum wage, had been subjected to misrepresented living and working conditions, was prevented from seeking legal redress, and lacked actual notice of her rights under the FLSA because she neither had retained a lawyer nor learned of her rights. *See also Chen*, 2012 U.S. Dist. LEXIS 4214, at *11-12 (finding that plaintiffs were entitled to equitable tolling for their FLSA and New Jersey Wage Collection Law ("NJWCL") claims based on defendant's failure to post the requisite notice). Similar to the plaintiff in *Cruz*, here, Plaintiff was paid less than

minimum wage, subjected to mispresented living and working conditions, was prevented from leaving her employment due to threats, and lacked actual notice of her rights. Compl. ¶ 49. Since Plaintiff was so actively misled, her claims should be equitably tolled on that basis alone.

### 2. Plaintiff's Claims Should be Tolled Because Plaintiff Was Prevented from Asserting Her Rights in an Extraordinary Way

In addition to having been actively misled, Plaintiff was prevented from filing a timely claim, which also supports equitable tolling due to extraordinary circumstances from Defendants' sustained coercion, intimidation, and threats to Plaintiff. *Id*. ¶¶ 10-12, 14. Indeed, after being prevented by extraordinary circumstances from asserting a timely claim, Plaintiff diligently pursued her rights once she knew of them and was able to. Accordingly, her claims should be tolled on this additional basis. *See Ross v. Varano*, 712 F.3d 784, 803 (3d Cir. 2013) (discussing a nexus between the extraordinary circumstances and a plaintiff's failure to file a timely claim).

### 3. Plaintiff's Claim Under the NJSA Is Not Time Barred for an Additional Reason

Defendants also assert that Plaintiff's claim under the NJSA is barred, in part, by the statute of limitations. Mot. at 7-8. It is not. Here, the applicable statute of limitations for NJSA claims are subject to a six-year statute of limitations. Defendants argue that Plaintiff's claim for wages between December 2016 and November 2017 is untimely. *Id*. at 8.

However, the statute of limitations does not start running until the date on which Plaintiff was no longer subject to Defendant's control, retained counsel, and learned of her rights under the NJSA. *See, e.g.*, *Cruz*, 773 F.3d at 145-47 (explaining that statutes were tolled when plaintiff was threatened and monitored by defendants, and that tolling based on lack of notice should continue until plaintiff retains an attorney or learns of her actual rights). This date cannot be earlier than the date when Plaintiff's employment with Defendants ended in February of 2021. Even assuming for

purposes of this motion that February 2021 was the applicable date for the statute of limitations to begin running, Plaintiff would be afforded until February of 2027 to file her NJSA claim. Therefore, all applicable unpaid wages and overtime pay under the NJSA, including those accrued prior to November 2018, are recoverable under the NJSA.

### III.   PLAINTIFF'S FAILURE TO PROVIDE NOTICE BEFORE TERMINATING THE CONTRACTS DOES NOT BAR HER FROM RECOVERY

#### A.   Defendant Arias Orlowska Was the First to Fail to Perform Under the Contracts

Under New Jersey law, "[t]o state a claim for breach of contract, [a plaintiff] must allege: (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Newark Cab Ass'n v. City of Newark*, 901 F.3d 146, 160 (3d Cir. 2018) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007)). Defendants assert that Plaintiff's contract claim should be dismissed because of her failure to provide two-week notice of her termination of employment. However, this alleged "failure to perform" occurred at the end of the employment relationship *after* Defendant Arias Orlowska had repeatedly failed to honor her obligations under the employment contracts for years. Prior to Plaintiff's alleged failure to provide notice, Plaintiff performed all of her obligations under the employment contracts, even in the face of Defendant Arias Orlowska's failure to perform. Defendants cannot rely on Plaintiff's alleged subsequent failure to perform to excuse Defendant Arias Orlowska's own prior breach. *Marino v. Brighton Gardens of Mountainside*, 697 F. Supp. 3d 224, 230 (D.N.J. 2023) (under New Jersey law, "a party in breach of contract cannot rely on the other party's subsequent failure to perform to excuse its own prior breach") (quoting *City of Trenton v. Cannon Cochran Mgmt. Servs. Inc.,* 2011 N.J. Super. Unpub. LEXIS 2076, 2011 WL 3241579, at *4 (N.J. Super. Ct. App. Div. Aug. 1, 2011)).

For example, in *Marino*, the defendant sought summary judgment on plaintiff's breach of contract claim, arguing that plaintiff's failure to continue to make payments under the contract barred her from later recovering under a breach of contract theory. 697 F. Supp. 3d at 230, 235. However, the *Marino* court denied summary judgment, noting that plaintiff had put forward sufficient evidence that the defendant breached the contract first and so the defendant could not use the plaintiff's subsequent breach of contract to avoid responsibility for its own earlier breach of the same contract. *Id.* at 236. *See also e.g., Heights, L.L.C. v. Qdoba Rest. Corp.*, 2020 U.S. Dist. LEXIS 271207, at *7 n.9 (D.N.J. Sept. 3, 2020) (rejecting defendant's argument that plaintiff's cessation of performance precluded plaintiff's breach of contract claim, where defendant breached the contract first). *Cf. Dautrich v. Nationstar Mortg., LLC*, 2018 U.S. Dist. LEXIS 109039, at *18-19 (D.N.J. June 29, 2018) (granting defendant's motion for summary judgment, where plaintiff breached the agreement first and defendant's subsequent breach was legally excused).

Similarly, here, from the beginning of the employment relationship, Defendant Arias Orlowska failed to perform most of her obligations under the Contracts. Compl. at ¶ 91. Plaintiff alleged specific instances where Defendant Arias Orlowska failed to perform under the Contracts. For example, under the Contract, Plaintiff was entitled to $840 every two weeks, based on a 40-hour workweek at $10.50 an hour, and under the Amendment, Plaintiff was entitled to $1,080 every two weeks, based on a 40-hour workweek at $13.50 an hour. *Id.* ¶¶ 27, 35, 44; *see also* Mot., Ex. C at 1; Mot., Ex. B at 4. Under the Contracts, Defendant Arias Orlowska was also required to comply with all federal, state, and local laws, including overtime pay, meal and rest breaks, and leave laws. Mot., Ex.B at 1-4; Mot., Ex.C at 1. However, Plaintiff was paid approximately half of

what she was entitled to and was never paid any overtime, despite working significantly longer hours than scheduled, in violation of federal, state, and local laws. Compl. ¶¶ 35, 47.

Additionally, under the Contracts, Defendant Arias Orlowska was also required to provide Plaintiff with "adequate and reasonable accommodations," which included a private bed. *Id.* ¶¶ 27, 45; *see also* Mot., Ex. B at 4. For the entirety of her employment, Plaintiff was never provided with a private bed. Compl. ¶¶ 36, 47. Instead, Plaintiff was required to sleep on a sofa bed in Defendants' living room, with no privacy during the evenings and non-working hours. *Id.*

Under the Contracts, Defendant Arias Orlowska was also required not to "prohibit [Plaintiff] from reporting intimidation, harassment, or abuse" or otherwise "retaliate in any way against [Plaintiff] for enforcing [her] legal rights." Mot., Ex. B at 5. Yet, Defendant Arias Orlowska coerced Plaintiff to continue working under illegal conditions under the threat that Plaintiff would be barred from every working in the United States again. Further, Defendant Arias Orlowska demanded that Plaintiff lie about the conditions of her employment in her U.S. Department of State ("DOS") annual check-in interview, including how much she was being paid and her general living conditions. Compl. ¶¶ 48-50. In both instances, Defendant Arias Orlowska used her position of power as Plaintiff's employer to threaten and intimidate Plaintiff to deter her from reporting unlawful employment conditions.

Taken all together, these claims clearly indicate that Defendant Arias Orlowska failed to perform her obligations under the Contracts first, and as established, in New Jersey, Defendants cannot avoid responsibility where they were in breach first. As such, regardless of Plaintiff's alleged subsequent breach, Plaintiff may still recover against Defendant Arias Orlowska for breach of contract.

**B.      Plaintiff's Failure to Provide Notice of Termination Did Not Breach Any Contractual Obligation**

Defendants argue that the Amendment required two weeks' notice prior to Plaintiff's termination of her employment, and Plaintiff's alleged failure to provide such notice was a breach of the Contracts. However, the Amendment merely states that "[Defendant Arias Orlowska] or [Plaintiff] *may* terminate this contract with two weeks of notice…" Mot., Ex. B at 5 (emphasis added). The plain language of the Amendment does not compel either party to provide two-week notice. *See e.g., Screen Actors Guild v. A. Shane Co.*, 225 Cal. App. 3d 260, 267-68 (1990) (finding the language of the notice provision was *permissive*, not mandatory, where the option *may* be exercised by written notice) (emphasis added). *Cf. Carlson v. Arnot-Ogden Mem'l Hosp.*, 918 F.2d 411, 414 (3d Cir. 1990) (where the notice provision provided that the parties *shall* continue until terminated by either party with written notice, such inclusion of *mandatory* language rebuts the at-will presumption) (emphasis added). Here, like many employment contracts, the Amendment suggests that two-week notice should be provided to either party as a professional courtesy and common practice, rather than a legal obligation. Further, the Amendment states, "State/local law may regulate terminations..." *Id.* Absent clear mandatory language, notice – let alone, two-week notice – is not required by either party in New Jersey as it is an "employment-at-will" state, meaning that an employer or employee may terminate the relationship at any time, without a reason, and without cause. State of New Jersey, Department of Labor and Workforce Development, Wage & Hour and Compliance FAQs (for Employers), https://www.nj.gov/labor/wageandhour/support/faqs/wageandhouremployerfaqs.shtml#:~:text=Notice%20is%20not%20required%20by,without%20a%20reason%2C%20without%20cause (last visited March 7, 2025). Thus, under the plain language of the Amendment, guided by state and local laws, Plaintiff was not obligated to provide two-week notice. As such, any alleged failure to

do so did not breach any legal obligation under the Contracts and Plaintiff may still recover against Defendants.

Even if the Court concludes the Amendment's plain language is ambiguous as to whether notice is mandatory or permissive, the Court should construe the terms against the drafter, Defendant Arias Orlowska. *See e.g., Maddy v. GE,* 80 F. Supp. 3d 544, 552 (D.N.J. 2015) (finding any contract of adhesion, which is a contract entered without any meaningful negotiation by a party with inferior bargaining power, is particularly susceptible to the rule that ambiguities will be construed against the drafter). Here, Defendant Arias Orlowska, a diplomatic agent with the Mission, prepared the Contracts using the U.S. State Department's Model Contract for Workers with an A-3 or G-5 Visa. Compl. ¶ 26; Mot. at 1. Plaintiff had no ability to dictate or negotiate any of the terms, including the notice provision, and relied on Defendant Arias Orlowska's representations of the Contracts terms. Thus, given Plaintiff's inferior bargaining power, if the Court finds the Amendment's plain language ambiguous, the Court should interpret the notice provision in favor of Plaintiff, finding any obligation to provide notice as permissive and permitting recovery against Defendants.

### C.    Plaintiff's Failure to Provide Notice of Termination Was Legally Excused

Even if Plaintiff was obligated to provide two-week notice, Plaintiff's alleged failure to do so was legally excused. Defendant Arias Orlowska first material breached the Contracts, which excused Plaintiff from further performance. *Las Vegas Sands Corp. v. ACE Gaming, LLC*, 713 F. Supp. 2d 427, 437 (D.N.J. 2010) (finding the non-breaching party may terminate the contract as a matter of law where the initial party's material breach excuses the non-breaching party's further performance under the contract).

-19-

Further, Plaintiff's alleged failure to give notice was also legally excused because Plaintiff's continued employment, which was inherently required under the two-week notice period, was induced by unlawful means. In New Jersey, "[w]here a contract is tainted by illegality in its terms *or in the mode of performance elected by one of the parties*…courts inquire into whether the illegality can be excised from the contract and the remainder enforced." *Pharm. Sales Consulting Corp. v. Accucorp Packaging, Inc.,* 231 F. App'x 110, 116 (3d Cir. 2007) (emphasis added) (*citing Schuran, Inc. v. Walnut Hill Assocs.,* 256 N.J. 228, 232-33 (1991)). In other words, where a party to a contract seeks to require or encourage an illegal act as part of performance under the contract, non-performance by the innocent party is legally excused. *In re Alleged Failure of Altice USA, Inc.,* 253 N.J. 406 (2023) (any agreement that requires performance of an illegal act is void). Here, Defendant Arias Orlowska's threatened Plaintiff to induce Plaintiff to lie (and likely perjure herself) to DOS about her unlawful employment conditions, in exchange for continued employment in the United States. Compl. ¶¶ 49-50, 52. Given the illegality of Defendant Arias Orlowska's demand and Plaintiff's reasonable fear of potential future retaliation, Plaintiff's decision to terminate her employment immediately, rather than wait two weeks, was lawfully excused, as such immediate termination prevented her from engaging in an unlawful act as a condition of her continued employment with Defendants.

### D. Even if Plaintiff Breached the Contracts, Plaintiff May Still Recover Due to Her Substantial Performance

Substantial performance occurs when a party acts in good faith and only makes slight deviations from the contract's prescribed obligations such that the other party gets substantially what it bargained for. *Universal Computs. (Sys.), Ltd. v. Datamedia Corp.,* 653 F. Supp. 518, 525 (D.N.J. 1987). In determining whether substantial performance has been rendered, the Third Circuit weighs several factors, including the ratio of the performance already rendered to that

unperformed, the quantitative character of the default, the degree to which the purpose behind the contract has been frustrated, the willfulness of the default, and the extent to which the aggrieved party has already received the substantial benefit of the promised performance. *In re Exide Techs.*, 607 F.3d 957, 963 (3d Cir. 2010) (applying New York law).

Plaintiff's allegations show that these factors weigh heavily in favor of a finding of substantial performance. First, Plaintiff fully rendered her domestic services to Defendants for over four years, from December 2016 to February 2021, prior to the termination of her employment with Defendants. Compl. ¶¶ 6, 48, 53. Defendants do not dispute that Plaintiff performed her contractual obligations during this period. Mot. at 8-9. Instead, Defendants rely solely upon Plaintiff's failure to give prior notice of termination, which does not negate the years of performance previously rendered by Plaintiff. *Id.* Thus, under the first factor, the years of performance already rendered to Defendants weighs in favor of a finding of substantial performance.

Second, as discussed above, Plaintiff's alleged "failure to perform" occurred at the end of the employment relationship after Plaintiff had already rendered over four years of domestic services to Defendants. Compl. ¶¶ 6, 48, 53. In contrast, Plaintiff's alleged failure to provide two-weeks' notice, if required, would have only deprived Defendants of domestic services for two weeks – minimal, in comparison to Plaintiff's rendered performance. As such, under the second factor, Plaintiff's alleged failure to provide notice was far less significant than Defendant Arias Orlowska's failure to perform under the Contracts first, which also weighs in favor of a finding of substantial performance.

Third, Plaintiff's alleged failure to provide notice did not frustrate the purpose of the Contracts because Plaintiff rendered all services, prior to Defendant Arias Orlowska's own breach

and illegal action. *Id.* ¶ 34. To the extent Plaintiff's alleged failure to provide notice did technically breach a contractual obligation, such a minor deviation does not bar recovery, as Plaintiff still rendered all promised domestic services to Defendants up until that point. As such, the third factor weighs in favor of a finding of substantial performance.

Fourth, as discussed above, Plaintiff only terminated her employment after Defendant Arias Orlowska threatened Plaintiff to induce her to lie to United States government officials as a condition of her continued employment. *Id.* ¶¶ 49-50, 52. While Plaintiff's termination of employment was willful, it was also legally excused as a reasonable means to prevent Plaintiff from engaging in an unlawful act as a condition of her continued employment with Defendants. As such, while the alleged failure to provide notice was willful, such a default was legally excused, and still slightly weighs in favor of a finding of substantial performance.

Lastly, while Defendants have significantly benefitted from the years Plaintiff rendered domestic services, Plaintiff has not received most of the benefits as promised under the Contracts. While Defendants did bring Plaintiff to the United States on a G-5 visa, as promised, from the beginning of her employment, Plaintiff was paid approximately half of what she was entitled to under the Contracts and was never paid any overtime, despite working significantly longer hours than scheduled, in violation of federal, state, and local laws. *Id.* ¶¶ 35, 47. Given that Defendants received full performance by Plaintiff but failed to perform most of their duties under the Contracts, including paying Plaintiff the contracted wages, ultimately, depriving Plaintiff of the substantial benefit of her rendered performance, this last factor weighs in favor of a finding of substantial performance.

Taken all together, after weighing the above factors, even if Plaintiff deviated from the Contracts, Plaintiff may still recover under the doctrine of substantial performance.

## IV.    PLAINTIFF IS ENTITLED TO PLEAD UNJUST ENRICHMENT

### A.    Plaintiff May Bind Defendant Youhana to the Contracts Under Unjust Enrichment

Unjust enrichment is an equitable concept that applies when a contract claim fails, but there has been a benefit conferred for which the party delivering the benefit deserves some compensation. *Lawmen Supply Co. of N.J. v. Glock, Inc.*, 330 F. Supp. 3d 1020, 1043 (D.N.J. 2018) (citing *Jenkins v. BAC Home Loan Servicing, LP*, 822 F. Supp. 2d 1369, 1377 (M.D. Ga. 2011)). Defendants argue that Plaintiff's unjust enrichment claim against Defendant Youhana should be dismissed as duplicative because recovery under an equitable theory is unavailable where an express agreement exists, regardless of whether Defendant Youhana was a signatory or not to the Contracts. Mot. at 9-10. However, in New Jersey, "a nonsignatory may be [bound to a contract] where the nonsignatory knowingly exploits the benefits of an agreement…and receives benefits flowing directly from the agreement." *Federman v. Bank of Am., N.A.*, 2016 U.S. Dist. LEXIS 70787, at *18 (D.N.J. May 31, 2016) (*quoting Belzberg v. Verus Invs. Holdings Inc.,* 21 N.Y.3d 626, 631 (2013)).

To be clear, Plaintiff does not dispute Defendants' point that Plaintiff cannot recover double damages against Defendants under both a breach of contract claim against Defendant Arias Orlowska and an unjust enrichment claim against Defendant Youhana. However, Plaintiff seeks to hold Defendants jointly and severally liable for Plaintiff's damages, where both Defendants assented to and received the benefits of the Contracts. Here, while not a signatory to the Contracts, Defendant Youhana still knowingly exploited and received the benefits from the Contracts. For example, Defendant Youhana consented to Plaintiff living and working in Defendants' home and was, at least, aware that Plaintiff lived and slept in Defendants' living room, even if unaware of the specific terms of the Contracts. Further, Defendant Youhana received and accepted the benefits

of Plaintiff's domestic labor under the Contracts, including caring for Defendants' three young children, cleaning Defendants' home, preparing Defendants' and their children's meals, and performing general domestic work in support of all household members. Compl. ¶ 31. Thus, under New Jersey law, Defendant Youhana may still be bound to the Contract and found liable to Plaintiff for her damages, under an equitable recovery theory.

### B. Plaintiff May Plead Unjust Enrichment in the Alternative

In the event Plaintiff's breach of contract claim fails against Defendant Arias Orlowska for any number of reasons, the Court may still consider the claim for unjust enrichment as an alternative theory of recovery. Unjust enrichment claims may be pleaded in the alternative to a breach of contract claim. *Dougherty v. Drew Univ.*, 534 F. Supp. 3d 363, 384 (D.N.J. 2021) (finding alternative pleading of unjust enrichment permissible where defendant may predictably raise the lack of any specific, written agreement). *See also generally* Fed. R. Civ. P. 8(a)(3) (a pleading that states a claim for relief must contain a demand for the relief sought, which *may include relief in the alternative* or different types of relief) (emphasis added). Defendants even seemingly concede that Plaintiff may plead unjust enrichment in the alternative to a breach of contract claims, where Defendants request that the unjust enrichment claim be dismissed as duplicative, if the contract claim is not dismissed. Mot. at 1.

Here, while not a signatory to the Contracts, Defendant Youhana knowingly benefitted from the valuable domestic services Plaintiff rendered to both Defendants and their household. Again, as stated above, Defendant Youhana received and accepted the benefits of Plaintiff's domestic labor under the Contracts, including caring for Defendants' three young children, cleaning Defendants' home, preparing Defendants' and their children's meals, and performing general domestic work in support of all household members. Compl. ¶ 31. As such, given Defendant Arias Orlowska's wrongful conduct, it would be unjust for Defendant Youhana to retain

the benefits received from Plaintiff without adequate compensation, in the event Plaintiff's breach of contract claim against Defendant Arias Orlowska fails or the Court finds Defendant Arias Orlowska immune from suit.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be denied in its entirety. To the extent that the Court is inclined to grant Defendants' Motion as to Defendant Arias Orlowska's diplomatic immunity, Plaintiff respectfully requests jurisdictional discovery.

Dated:    March 24, 2025          Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

*s/ Tonia Ouellette Klausner*
Tonia Ouellette Klausner
Wilson Sonsini Goodrich & Rosati,
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone:      212-497-7706
Facsimile: 866-974-7329
Email: tklausner@wsgr.com


Jessica Kitson
VOLUNTEER LAWYERS FOR JUSTICE
24 Commerce Street, Suite 610
Newark, New Jersey 07102
Telephone: 973-645-1951
Facsimile: 973-645-1954
Email: jkiston@vljnj.org

*Counsel for Plaintiff*

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on this 24th day of March, 2025, I filed the foregoing motion to dismiss, and all supporting papers, with the Clerk of the United States District Court for the District of New Jersey via ECF, and served a copy on all counsel of record as follows:

**SARAH FEHM STEWART**
DUANE MORRIS LLP
200 CAMPUS DRIVE
SUITE 300
FLORHAM PARK, NJ 07932
973-424-2061
Email: <u>sfstewart@duanemorris.com</u>
*Attorney for Defendants*

<u>s/ Tonia Ouellette Klausner</u>
Tonia Ouellette Klausner